Filed 12/18/25  In re I.P. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re I.P., a Person Coming Under the Juvenile Court Law. | C103119 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.P.,<br><br>        Defendant and Appellant. | (Super. Ct. Nos. 53005651, 53005652) |

1

The Placer County Department of Health and Human Services (Department) appeals from the juvenile court's dismissal of a juvenile dependency petition brought pursuant to Welfare and Institutions Code section 300.[1] The Department contends the court abused its discretion when it excluded the testimony of the Department's expert witness and violated the Department's right to due process and fundamental fairness by refusing to provide it with the opportunity to respond in writing to a written motion to dismiss the petition. We find no prejudicial error and affirm the orders of the juvenile court.

## FACTS AND PROCEEDINGS

*Family Court Proceedings*

Mother (C.P.) filed for divorce from father in May 2022. In May 2023, a domestic violence restraining order (DVRO) was issued protecting mother from father, and in August 2023 a criminal protective order was issued. As of July 2024, mother had sole physical and legal custody of G.P. and I.P. (collectively, the minors); father's access to medical and educational records and information was revoked, and he was granted limited visitation rights with the minors.

*Dependency Petition*

On August 9, 2024, the Department filed a juvenile dependency petition alleging 11-year-old G.P. and 10-year-old I.P. came within the jurisdiction of the juvenile court under section 300, subdivisions (b) and (c). The petition originally alleged that the minors suffered, or were at substantial risk of suffering, serious physical harm or illness due to mother's willful or negligent failure to provide the minors with adequate medical and mental health care, and serious emotional damage as a result of mother's conduct toward them and parental alienation of father.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

On October 15, the Department filed an amended petition--the operative petition--that omitted the physical harm allegation and alleged only that G.P. and I.P. suffered, or were at risk of suffering, serious emotional damage due to mother's conduct (§ 300, subd. (c)(1)), which included mother's "involv[ing] the children in her toxic and contentious relationship with the father" by trying to "alienate the father from the children," with examples of alleged behaviors in that regard. The amended petition further alleged that mother's conduct caused fear, stress, and anxiety in the minors, she lacked insight into how her behavior affected the minors, and she did not take responsibility for her actions.

*Detention Report*

On August 12, 2024, the Department filed a detention report, which summarized the information it had gathered and recommended that the minors be detained from mother and placed with father.

As relevant here, a March 2024 referral alleged the parents were involving the minors in their ongoing contentious family law case, as there had been numerous referrals alleging neglect and emotional abuse by mother and father, which could be affecting the minors' emotional well-being and potentially causing anxiety or parental alienation. Indeed, 17 previous referrals were received between February 2023 (when mother filed for divorce from father) and August 2024. Family law investigator Stephanie Stilley opined that the minors were " 'completely triangulated in this mess.' " The detention report provided a significant level of detail about the allegations related to both parents' conduct, and the effect thereof on the minors, which we summarize generally given the nature of the claims on appeal.

Both minors reported that the parents argued frequently before father left the home in 2022, with yelling and occasional breaking sounds. G.P. recalled that father frequently drank alcohol before leaving the home in 2022, and the parents often argued when father had been drinking. Mother sent the social worker videos of her and father arguing in the

3

house, most of which pre-dated the parents' separation, and text messages and documents, some of which the social worker believed had been doctored.

A witness reported to a social worker that mother coached G.P. to tell law enforcement that father "beats [her]," to which G.P. responded that he had never seen father do so. Father denied ever being physically violent.

Mother reported to a social worker that father had violated active restraining orders on numerous occasions. Stilley confirmed that father had done so, although the social worker noted father's explanation that mother would come to events on his parenting time and then call law enforcement to have him arrested for violating the restraining orders.

Mother reported that the minors feared father, were suffering from panic attacks related to father's behavior during their visits with him, and that he showed the minors police reports and talked negatively about her to them. In April 2024, the minors recalled that father had had "talks" with them that included showing them police reports and saying bad things about and blaming mother, although he had not had such a "talk" with them since December 2023. Father admitted to discussing the family law case with the minors on one occasion, although he acknowledged that "was not a good idea." G.P. said he felt comfortable with father and would like to spend more time with him, and that visits had improved after father stopping having "talks" with them. I.P related that visits with father were "good," although she was concerned that father would have more "talks" with them.

Mother expressed concern that father sexually abused I.P. and had tried to hug or kiss her. I.P. informed the social worker that she was uncomfortable with father hugging or kissing her because when she was eight or nine years old, father grabbed her chest and said: "Those are getting big." Father denied that allegation and accused mother of alienating him from his children, noting that I.P. would not hug him anymore.

4

Father had been G.P.'s baseball coach. G.P. stated that he liked playing baseball and characterized father as "a good coach." In April 2023, mother reported to G.P.'s pediatrician that baseball was a source of stress for him, and it was agreed G.P. would stop playing baseball. In January 2024, mother brought G.P. to the pediatrician, where he presented with " 'worsening anxiety/stress due to parents['] actions.' "

In December 2023, mother informed the pediatrician that I.P. was having anxiety attacks before going to father's home, and that he disparaged mother during their visits. Mother reported that father had recently touched I.P.'s nipples, and I.P. recalled that father had touched her breasts and nipples when she was about six years old. In January 2024, I.P. "presented with stress and anxiety due to parents' actions"; during the visit, mother alleged that father had violated a restraining order and discussed recurrent issues with visitation. In February, mother informed the pediatrician that I.P. was not speaking, which mother attributed to stress induced by father kissing her on the head. In March, mother reported to the pediatrician that I.P. was " 'terrified' " about going to father's house.

In April 2024, the social worker told mother there was sufficient evidence to substantiate emotional abuse allegations due to her conduct. The social worker indicated to Stilley that mother may be influencing the children's perceptions of father, and noted that mother reported multiple issues that were not expressed by the children when interviewed.

Stilley expressed concern with mother's behaviors, but she recommended that the family court continue to be the lead court.

In May, the family court ordered the parents to participate in services, and ordered mother to enroll the minors in therapy. In July, Stilley noted that mother had failed to enroll G.P. into therapy, had failed to follow through on payment for I.P.'s therapy, and was harming father's relationship with the children by refusing to let I.P. have in-person visits with him, instead opting for video conferences with mother present. Later that

5

month, Stilley again expressed frustration with mother's failure to cooperate with the family court's orders and interference with father's visitation. The social worker noted that she had received text messages from I.P. to father, in which I.P. stated that she loved and was grateful for father and loved spending time with him. The Department noted its concern for the minors' health and wellbeing due to mother's "manipulative, deceitful, and harmful tactics to alienate the father and make the children fear him."

On August 7, the Department executed protective custody warrants for the minors while they were visiting father and placed the minors with him. On August 14, the juvenile court detained the minors from mother.

*Jurisdiction Report*

On August 30, 2024, the Department filed a jurisdiction report, which set forth the evidence supporting the allegations in the petition and recommended the juvenile court find the allegations to be true. The report opined that mother utilized the minors "in her vendetta against the father," and had used law enforcement, the child welfare system, and the medical system to villainize father in family court and in the eyes of the children. The report opined that while the minors wished to reside with mother, it was in their best interest that they remain with father while they and mother continued receiving therapeutic services.

*Addendum Reports*

The Department filed addendum reports with attached exhibits in December 2024 and January 2025. The December addendum report indicated that mother had attempted to have father arrested for violating the restraining order; father was not arrested. On November 27, mother declined to begin therapeutic services, but she agreed to participate in a parallel parenting program.

*Jurisdiction Hearing*

The jurisdiction hearing began on January 13, 2025. The documentary evidence on file with the juvenile court included: (1) the August 12, 2024, detention report and

6

attached exhibits; (2) the August 30, 2024, jurisdiction report and attached exhibits; (3) an October 2, 2024, supplemental memorandum and attachments including delivered service logs; and (4) the December 2024 and January 2025 addendum reports. The court took judicial notice of various matters and admitted numerous exhibits during the 14-day trial. Finally, numerous witnesses testified at the jurisdictional hearing, including: mother; father; G.P.; I.P.; I.P.'s school principal, vice principal, and court-appointed special advocate (CASA); G.P.'s CASA; the Department program manager for intake and visitation; Department visit monitors; a Department emergency response social worker; a social worker who authored the jurisdiction report; the minors' pediatrician; several law enforcement personnel; several family friends and acquaintances; and four of the minors' half siblings.[2]

*Expert Testimony Excluded*

One witness who was not permitted to testify at trial was clinical psychologist Dr. Eugene Roeder, whom the Department sought to call as an expert witness. Dr. Roeder's proffered testimony was that the record he had reviewed contained substantial evidence that mother emotionally abused her children by damaging their relationship with father, and the proffer indicated he would further testify about the effect mother's abuse would have on the children were it allowed to continue.

The juvenile court granted mother's motion to exclude Dr. Roeder's testimony. The court granted the motion on several bases, including, as relevant here, that Dr. Roeder's testimony was unnecessary for the court to decide the issues it was called upon to resolve. The Department challenges this ruling on appeal; we will set forth additional procedural background in the Discussion, *post*.

_____

[2] The Department expressly omits "a detailed breakdown" of the witnesses' trial testimony from its briefing, indicating that it is "not directly bringing a sufficiency of the evidence challenge in favor of the related abuse of discretion arguments."

*Mother's Motion to Dismiss*

At the close of the Department's case in chief, mother filed a written motion to dismiss pursuant to section 350, subdivision (c), and a request for judicial notice. Following oral argument and over the Department's objection that it had not had the opportunity to respond to the motion in writing, the juvenile court granted mother's motion to dismiss. The court returned the minors to mother's care and restored the previous family law custody orders.

The Department timely filed notice of appeal. The case was assigned in October 2025 and was fully briefed during that month.

## DISCUSSION

### I

### *Excluding Expert Witness Testimony*

The Department contends the juvenile court prejudicially abused its discretion when it excluded Dr. Roeder's testimony. As we will explain, the court did not abuse its discretion when it determined the expert testimony was unnecessary to assist in its role as factfinder.

A. *Additional Background*

On January 23, 2025, mother objected to Dr. Roeder's testimony on the basis that she had not received any discovery related to Dr. Roeder's testimony, and she requested a proffer. The following day, the Department provided mother with a circumscribed proffer for Dr. Roeder's testimony: "Dr. Roeder will testify the record he reviewed contains substantial evidence the mother not only did not support the relationship between the children and their father but engaged in actions to actively interfere with and damage this relationship, and that in his opinion this behavior constitutes emotional abuse of the children. He will also testify, based on his work with thousands of families involved in dependency and family law cases over the last forty years, regarding the impact this emotional abuse would have on the children's psychological functioning were

8

it allowed to continue or resume."[3]  The Department provided a list of documents provided to Dr. Roeder and stated its intent to call the doctor to testify on January 30.  In response to mother's request, the Department obtained Dr. Roeder's notes from his interview with the children and sent them to mother's counsel.

Mother filed a motion in limine seeking to exclude Dr. Roeder's testimony, which the Department opposed.

On January 31, the juvenile court granted mother's motion to exclude Dr. Roeder's testimony.  The court provided several bases for exclusion, but we focus on one:  The court indicated that it understood Dr. Roeder's proffered testimony to be his opinion about issues the court would be called upon to resolve and stated that it did not "need a weatherman to tell [it] which way the wind blows in this case," and "it sounds like that's what [Dr. Roeder is] going to do."

B.  *Legal Background*

Under section 300, subdivision (c), a court may exercise dependency jurisdiction over a child who "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian."  Thus, section 300, subdivision (c) "extends both to a child who is suffering serious emotional damage, and a child who is at *substantial risk* of suffering serious emotional damage." (*In re A.J.* (2011) 197 Cal.App.4th 1095, 1104.) " '[T]he question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.' " (*Ibid.*)

"A dependency proceeding commences when a child welfare agency files a petition alleging that a child has been abused or otherwise comes within the court's

---

[3]  Dr. Roeder interviewed the minors on January 8, but the Department confirmed that he would not testify about the interviews or rely on them in reaching his conclusions.

jurisdiction under section 300. ([] §§ 325, 332.) The court then holds a hearing at which it may receive in evidence '[a]ny legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court.' ([] § 355, subd. (a); see [] § 334.) 'Proof by a preponderance of evidence must be adduced to support a finding that the minor is a person described by Section 300' who may be adjudged a dependent of the court." (*In re I.C.* (2018) 4 Cal.5th 869, 876.)

"Except to the extent the [juvenile] court bases its ruling on a conclusion of law (which we review de novo)" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773), the court "is vested with broad discretion in ruling on the admissibility of evidence," and its rulings " ' "will be upset only if there is a clear showing of an abuse of discretion" ' " (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 121). " ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " ' " (*Ibid.*)

"Expert opinion testimony is admissible only if it is '[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (*People v. Watson* (2008) 43 Cal.4th 652, 692, quoting Evid. Code, § 801, subd. (a).) The juvenile court has broad discretion in deciding whether to admit or exclude expert testimony. (*People v. Bui* (2001) 86 Cal.App.4th 1187, 1196; *People v. Carpenter* (1997) 15 Cal.4th 312, 403 ["When expert opinion is offered, much must be left to the trial court's discretion"]; *People v. McDowell* (2012) 54 Cal.4th 395, 426 [whether proffered expert testimony is admissible is a judgment call left to the trial court's broad discretion, which we review for abuse of discretion].)

Finally, the improper exclusion of evidence is not reversible unless it is prejudicial, meaning, " ' " 'it is reasonably probable a result more favorable to the appellant would have been reached absent the error.' " ' " (*In re Jordan R.*, *supra*, 205 Cal.App.4th at p. 134.)

C. *Analysis*

The issue the juvenile court was called upon to decide in this case was whether the Department had proved by a preponderance of the evidence that mother's conduct had caused the minors to suffer, or put them at substantial risk of suffering, serious emotional damage. (§ 300, subd. (c)(1).) The juvenile court excluded Dr. Roeder's testimony after hearing the proffer on the basis that Dr. Roeder's opinion on the ultimate issue of substantial risk of emotional harm was unnecessary for the court to make its assessment.

We first note that a juvenile court need not rely on expert psychological or psychiatric evidence to support its jurisdictional findings. "[E]xpert witnesses are appointed only where 'expert evidence is or may be required . . . .' [citation], and their testimony is limited to 'a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . .' [Citation.] Because the matter to be determined at the jurisdictional hearing is whether a child is at substantial risk of harm at the hands of a parent, due to parental acts or inaction, if that assessment can be made within ordinary experience, no expert is necessary." (*Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 202, fn. omitted; see Evid. Code, § 801, subd. (a).)

The Department acknowledges expert testimony is not required where substantial risk may be assessed within ordinary experience, and it does not argue that the substantial risk assessment was sufficiently beyond common experience, such that expert testimony was required to assist the court. Accordingly, the Department has *not* demonstrated that expert testimony was required here. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error"].) Indeed, this is unlike the situation where a child exhibits physical injuries or a failure to thrive, and an expert medical opinion is needed to determine if the injuries were accidental rather than intentionally inflicted, or the child is malnourished due to starvation rather than organic problems. While a psychologist or psychiatrist may

11

have greater insight into the effect of emotional abuse on children than a layperson, whether mother posed a substantial risk of emotional damage to the minors could be evaluated by the court without an expert. Because nothing suggests that the substantial risk determination was beyond common experience, we cannot say the juvenile court abused its discretion when it declined to hear, after considering the Department's proffer, a summary opinion of the meaning of the extensive evidence that the court had already heard and considered.

The Department argues the exclusion was an abuse of discretion because juvenile courts should not restrict or prevent testimony on formalistic grounds, but rather should avail themselves of all evidence that might bear on the children's best interest. (*Charles S. v. Superior Court* (1985) 168 Cal.App.3d 151, 157.) Although we have no cause to dispute that general principle, we do not agree that the juvenile court's decision that it did not need to hear Dr. Roeder's testimony was unduly formalistic. The court did not, for example, exclude the testimony based on the formalistic application of a statute to the exclusion of its policy and purpose. (See *Guadalupe A. v. Superior Court* (1991) 234 Cal.App.3d 100, 107 (*Guadalupe A.*) [statutory interpretation defeated policy and purpose of dependency statutes].) Instead, the court considered the proffered testimony and determined it was not particularly useful, let alone necessary. The principle on which the Department relies did not require the juvenile court to admit all relevant evidence. (See *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843-1844 [disagreeing that § 706, which directs court in wardship disposition proceeding to receive "such other relevant . . . evidence as may be offered," mandates presentation of "all relevant evidence"; "such a literal construction would lead to absurdity" and Evid. Code, § 352 was necessarily implied therein].) Rather, and as we have discussed, the juvenile court had broad discretion to exclude proffered expert testimony that was not sufficiently beyond common experience such that the testimony would have assisted it in deciding the issues

12

in the case.  (*People v. McDowell*, *supra*, 54 Cal.4th at p. 426; *People v. Watson*, *supra*, 43 Cal.4th at p. 692.)

While the Department argues that Dr. Roeder's testimony would have addressed the elements of the substantial risk allegation, it does not argue that the proffered testimony was beyond common experience or show that the testimony was necessarily probative beyond what the juvenile court had already read in reports and heard from multiple witnesses.

The cases cited by the Department do not change this result.  It points to *In re Jasmon O.* (1994) 8 Cal.4th 398 at page 430, in which the appellate court stated: "Without the testimony of psychologists, in many juvenile dependency and child custody cases superior courts and juvenile courts would have little or no evidence, and would be reduced to arbitrary decisions based upon the emotional response of the court.  It cannot seriously be argued that such evidence should be excluded, or denied substantial weight."

This is not a case where the juvenile court was left with little or no evidence, such that it was reduced to arbitrary decisions based on its emotional response.  Rather, the court considered significant documentary evidence and testimony from 27 witnesses, including multiple licensed social workers and Department staff, a family court investigator, the minors' pediatrician, and law enforcement personnel, among others.  Indeed, Dr. Roeder's proffered testimony was that his review of the documentary record--which was already before the juvenile court--contained substantial evidence of mother's emotional abuse of the minors.  This was a decision that the juvenile court indicated it felt fully equipped to make without expert opinion on the ultimate issue; the Department does not explain why it was error for the court to conclude otherwise.

Next, the Department points to *In re Caden C.* (2021) 11 Cal.5th 614, in which our Supreme Court determined in the context of a termination of parental rights hearing under section 366.26 that juvenile courts should allow for bonding studies or other relevant expert testimony "where requested and appropriate," when analyzing whether a

child would benefit from a continued relationship with a parent. (*Caden C.*, at p. 633, fn. 4.) The court observed, "often expert psychologists who have observed the child and parent and can synthesize others' observations will be an important source of information about the psychological importance of the relationship for the child." (*Id.* at pp. 632-633.) But here and as we have discussed, Dr. Roeder's proffered testimony was his opinion of the documentary evidence before the court and was not based on his observations of mother and the children. It was based on what the juvenile court had already heard and considered. Further, the fact that expert testimony can assist a trier of fact in the context of determining the psychological importance of a relationship for a child does not necessarily mean that the juvenile court abused its discretion in determining that Dr. Roeder's testimony would not assist it in this case.

Finally, the Department references *Guadalupe A.*, *supra*, 234 Cal.App.3d 100, in which the reviewing court held that the juvenile court had erred when it granted its own motion to dismiss under section 350, subdivision (c) without allowing the minor to present evidence to the court. In granting the motion, the juvenile court observed that none of the witnesses who testified regarding the detrimental effect of returning the minor to the mother were experts in the area, and determined that it could not find substantial detriment in the absence of expert testimony. (*Guadalupe A.*, at p. 106.) The appellate court acknowledged that nothing in former section 350, subdivision (c) required the juvenile court to permit the minor's counsel to present evidence before ruling on the motion, but it concluded that the policy and purpose of the dependency statutes required permitting "another party"--there, the minor--to present pertinent evidence before the motion is ruled on. (*Guadalupe A.*, at p. 107.)

*Guadalupe A.* has no application here. The issue before the appellate court in *Guadalupe A.* was whether the juvenile court could refuse to permit the minor's counsel to present evidence before granting a motion to dismiss. Conversely, here the issue is whether the juvenile court abused its discretion by excluding expert testimony it

14

determined was unnecessary to decide the issues before it. Moreover, the appellate court in *Guadalupe A.* found the juvenile court's error to be prejudicial because that court had granted the motion to dismiss on the basis that no expert testimony was presented on the issue of substantial detriment to the minor, where the minor's proffered evidence would have cured what the juvenile court had characterized as a deficiency in the case. (*Guadalupe A.*, *supra*, 234 Cal.App.3d at p. 107.) Here, the juvenile court did not identify an absence of expert testimony as the basis for its ruling on the motion to dismiss.

On appeal, the Department had the burden to demonstrate that each of the juvenile court's bases for exclusion constituted an abuse of discretion. (See *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 612 ["a [juvenile] court's order will ordinarily be upheld if it is legally correct on any basis"].) The Department has not carried its burden to show that the juvenile court abused its discretion when it excluded Dr. Roeder's testimony as unnecessary to its decision. Based on this conclusion, we need not and do not consider the Department's challenges to the juvenile court's remaining bases for excluding the testimony.

D. *Any Error Was Harmless*

Even were we to conclude the juvenile court abused its discretion in excluding Dr. Roeder's testimony (we do not) any such error would have been harmless. (See *In re Malik T.* (2022) 73 Cal.App.5th 1109, 1128 [an evidentiary ruling will not be reversed if there is no showing that excluding the evidence resulted in a miscarriage of justice].) As we discussed *ante*, the Department has not shown that the substantial risk determination was beyond the juvenile court's common experience, and there was significant documentary evidence and testimony from numerous witnesses to assist the court. The juvenile court considered the proffered testimony and determined it was not necessary or helpful; therefore, even if the evidence had been admitted, it is not reasonably likely that the testimony would have changed the court's mind.

15

The Department argues that prejudice appears because Dr. Roeder's proffered testimony went to the issue the juvenile court found the Department had failed to prove. We disagree. First, there was only one allegation in this case--substantial risk of serious emotional damage under section 300, subdivision (c)--and exclusion was not prejudicial merely because the proffered testimony was relevant to the ultimate issue. Moreover, Dr. Roeder was not a percipient witness; his proffered testimony was based on his review of the same reports that were before the juvenile court. Thus, even if Dr. Roeder had testified, it is not reasonably likely the result would have been different.

Finally, we observe the children were 10 and 11 years old at the time of the amended petition, and are 11 and nearly 13 years old as of the date of this opinion. The family court has continued jurisdiction over this case and, as we have described, was heavily involved with the family at the time the Department brought the case to the juvenile court. No parties argue the custody orders in place were not subject to modification by the family court. The family court may consider and give weight to the children's preferences as to custody where the children are of sufficient age and capacity to form an intelligent preference. (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 964, fn. 11.) No prejudice appears.

II

*Motion to Dismiss*

The Department contends the trial court violated its right to due process and fundamental fairness by granting mother's written motion to dismiss under section 350, subdivision (c) without providing it with the opportunity to file a written response. We disagree.

A. *Additional Background*

On Tuesday, February 4, 2025, the Department concluded its presentation of evidence. The court recessed and adjourned until the morning of Thursday, February 6.

16

In the evening of February 4, mother electronically filed a motion to dismiss pursuant to section 350, subdivision (c), which was accompanied by a request for judicial notice.

On February 6, the juvenile court took up the motion to dismiss. The Department notified the court that it had not had a full opportunity to review and respond to the motion. After hearing oral argument, the juvenile court granted the motion and dismissed the amended petition, finding the Department had not proved by a preponderance of the evidence that mother's conduct will cause substantial risk of emotional damage in the future.

B. *Analysis*

"Section 350 addresses the control and conduct of proceedings under section 300. . . . [T]he juvenile court has the power to 'control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought.' (§ 350, subd. (a)(1).) Section 350, subdivision (c), which authorizes the motion to dismiss at issue here, provides: 'At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department and the minor has been closed, the court, on motion of the minor, parent, or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing all of the evidence then before it, finds that the burden of proof has not been met.' This section 'allows a parent to test the sufficiency of the [a]gency's evidence before presenting his or her case' and 'permits the court to dismiss the dependency petition when, upon weighing the evidence on behalf of the agency and the minor then before it, it finds that the burden of proof has not been met.' " (*In re Emily D.* (2015) 234 Cal.App.4th 438, 449.)

The Department's claim of a violation of due process and fundamental fairness lacks merit. "Due process is the opportunity to be heard at a meaningful time and in a meaningful manner. [Citation.] Unlike some legal rules, due process ' "is not a technical

conception with a fixed content unrelated to time, place and circumstance." [Citation.]'
[Citation.] Rather, it ' "is flexible and calls for such procedural protections as the
particular situation demands." ' " (*Southern Cal. Underground Contractors, Inc. v. City
of San Diego* (2003) 108 Cal.App.4th 533, 543.) Initially, the Department points to no
statute, rule, or appellate opinion requiring the juvenile court to provide it with the
opportunity to respond in writing to mother's motion to dismiss. The Department
received mother's written motion challenging the sufficiency of the evidence that it had
presented, and it had the full and fair opportunity to orally summarize the evidence it had
presented--and with which it was intimately familiar--and argue that that evidence was
sufficient to satisfy its burden of proof. No due process violation appears.

## DISPOSITION

The judgment is affirmed.


_____/s/_____
Duarte, J.

We concur:


_____/s/_____
Mauro, Acting P. J.


_____/s/_____
Wiseman, J.*

_____

**\*** Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by
the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18